IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, </br></br> Plaintiff, </br></br> v. </br></br> STEVE ADKISON, </br></br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.: 4:17-CV-0366-VEH |

# MEMORANDUM OPINION

This is a civil action filed by the Plaintiff, Nationwide Agribusiness Insurance Company ("Nationwide") against the Defendant, Steve Adkison. Nationwide seeks a declaration of its rights, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, under an insurance policy it issued to Adkison. As noted in the Complaint:

> Adkison has presented Nationwide with estimates for repair of alleged wind damage to one or more poultry houses, which said estimates exceed $75,000.00. Nationwide contends that Adkison failed to comply with his post-loss obligations under the Policy, and that Adkison's failure to promptly notify it of the alleged damage was unreasonable as a matter of law. Nationwide further contends that Adkison failed to mitigate his alleged damages, and/or failed to prevent further damage after discovering initial damage, in contravention of his post-loss obligations under the Policy and/or Alabama law. Nationwide contends that it is therefore not responsible for the alleged loss.

(Doc. 1 at 1-2). The case comes before the Court on the Defendant's motion to dismiss for improper venue or, in the alternative, to transfer this case. (Doc. 8). For the reasons stated herein, the motion will be **GRANTED**. The Court, in its discretion will **DISMISS** this case **WITHOUT PREJUDICE**.

## **28 U.S.C.A. § 1406**

Because the Defendant argues that venue is <u>improper</u> in this district, the Court must consult 28 U.S.C.A. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.A. § 1406(a). By the terms of the statute, the Court must first determine whether venue is improper in this district. If so, then the court "shall dismiss" unless it is in the interest of justice to transfer the case to a district where it could have been brought.

### *Venue Is Not Proper in the Northern District of Alabama*

Venue is appropriate in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

2

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C.A. § 1391(b). There is no dispute that, under subsection (b)(1) of section 1391, venue is appropriate in the <u>Middle</u> District of Alabama.[1] Therefore, there is a district "in which [the] action may otherwise be brought," so subsection (b)(3), which only applies is there is no such district, is inapplicable.

If venue is appropriate in the northern District of Alabama at all in this case, it can only be if this district is where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C.A. § 1391(b)(2). The Eleventh Circuit has noted:

> This language was added in 1990, amending the former subsection 2 which provided for venue only in the single district "in which the claim arose." Congress believed that the old phrase was "litigation-breeding," partly because it did not cover the situation "in which substantial parts of the underlying events have occurred in several districts." See H.R. Report of the Committee on the Judiciary, Rep. No. 101–734, at 23 (1990). The old language was problematic because it was oftentimes difficult to pinpoint the single district in which a "claim arose." Consider, for example, a breach-of-contract case with these facts: the agreement is executed in Oregon; the defendant fails to deliver goods to New York and California; and the defendant makes an anticipatory repudiation of the rest of the contract from its home office in Utah. Or consider a toxic tort case in which the defendant's factories in Colorado and Missouri pollute a river, causing injury to Arkansas and

---

[1] There is only one Defendant in this case, Adkison, who resides in New Brockton, Alabama (doc. 1 at 1), which is in Coffee County in the Middle District of Alabama.

> Louisiana citizens who ingest the water. If one had to pick a single district in which the tort or contract claim "arose," each scenario would require the district court, after extensive litigation, to pick a district in an arbitrary fashion.
>
> The new language thus contemplates some cases in which venue will be proper in two or more districts. This does not mean, however, that the amended statute no longer emphasizes the importance of the place where the wrong has been committed. Rather, the statute merely allows for additional play in the venue joints, reducing the degree of arbitrariness in close cases. The statute's language is instructive: venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2) (emphasis added). Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a "substantial part" of the events are to be considered.

*Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).

As Adkison has challenged venue under § 1406(a), Nationwide, the party that chose to institute this case in the Northern District of Alabama, now has the burden of showing that venue in this forum is proper. *Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006) (*citing Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990)).

> Further, "[t]he facts as alleged in the complaint are taken as true to the extent they are uncontroverted by defendants' affidavits." When affidavits conflict, the court is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff.

*Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (*quoting*

*and citing DeLong Equip. Co.*, 840 F.2d at 845 (11th Cir.1988)); *see also, Williams v. Student Loan Guarantee Found. of Arkansas*, No. 5:12-CV-02940-JHE, 2015 WL 241428, at *4 (N.D. Ala. Jan. 20, 2015) (England, M.J.) (same). It has been noted:

> Essentially, the prima-facie standard, the determination of which may be made on the pleadings, boils down to one of 'plausibility'; to withstand a motion to transfer on the basis of plaintiff's venue of choice being improper, the plaintiff must show only that the venue chosen is plausibly proper. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Goodwyn, Mills & Cawood, Inc. v. Black Swamp, Inc.*, 956 F. Supp. 2d 1323, 1327 (M.D. Ala. 2012) (Thompson, J). "[The party objecting] to venue under 28 U.S.C. § 1406(a), bears 'the burden of establishing that venue is improper.'" *Canal Ins. Co. v. Yelder*, No. 2:10CV185-MHT, 2010 WL 2640241, at *1 (M.D. Ala. June 22, 2010) (Thompson, J.) (quoting 17 James Wm. Moore, et al., *Moore's Federal Practice* § 110.01[5][c] (3d ed.2009)).

Here, the Plaintiff has not satisfied its burden to demonstrate a *prima facie* case that venue is appropriate in this district. The complaint alleges that venue is appropriate because "Nationwide issued its insurance policy that is the subject of this lawsuit to its insured, Adkison, in Marshall County, Alabama." (Doc. 1 at 2). In its opposition to the instant motion, Nationwide argues at length at "[a] substantial part

of the [events] giving rise to the formation of the underlying contract occurred in Marshall County." (Doc. 14 at 4; *see also* doc. 14 at 5-7). However, this argument misses the point. The Complaint does not seek a declaration that there was or was not a validly issued policy of insurance. It seeks a declaration that it owes no duty to the Defendant under the policy because: 1) Adkison did not provide prompt notice of the alleged loss to Nationwide; and 2) Adkison did not mitigate his damages. (Doc. 1 at 9, ¶¶28-30). Facts and evidence relating to where the contract was formed are irrelevant to the those issues, and therefore are irrelevant to the Plaintiff's claim.

The Plaintiff also argues that "[i]n addition to the formation of the contract, a substantial portion (and arguably, all) of the events surrounding Adkison providing notice of the loss occurred within Marshall County." (Doc. 14 at 7). It then, without authority, states:

> As set out in Nationwide's Complaint and accompanying exhibits, Adkison himself testified that the first notice he provided, in September of 2016, was provided to MistieWiggs. Adkison reached into Marshall County, as he had before in procuring the policy at issue, to provide this initial notice. The timing and content of that notice are the only facts necessary to resolution of the issue of whether Adkison's five-month delay was unreasonable, and therefore must constitute a substantial part of the events giving rise to Nationwide's claim.

(Doc. 14 at 7). This argument ignores Alabama law, which holds that "there are only two factors to be considered in determining the reasonableness of a delay in giving

notice to an insurer: the length of the delay and the reasons for the delay." *S. Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 883 (Ala. 1976); *see also, Travelers Indem. Co. of Connecticut v. Miller*, 86 So. 3d 338, 347 (Ala. 2011) (same); *Nationwide Mut. Fire Ins. Co. v. Estate of Files*, 10 So. 3d 533, 535 (Ala. 2008) (same).

The Complaint in this matter sets out the facts which explain the reasons for the Defendant's delay in giving notice. It reads:

> **2. Facts Regarding the Alleged Loss and Notice of Same**[2]
>
> 10. Adkison and his wife operate a poultry farm located in New Brockton, Alabama. At the time of the alleged wind event(s) giving rise to the loss claimed by Adkison, he was operating four poultry houses on his farm. [See Exhibit B at p. 000015-19.] Upon information and belief, Adkison alleges that all four poultry houses have been damaged due to wind events.
>
> 11. Adkison purchased the farm in approximately 2002. At the time he purchased the farm, five poultry houses existed on the property. One burned down prior to the Nationwide policy being issued, and is not a part of the claim at issue. [See Exhibit B at p. 000010, 000016-17.]
>
> 12. The first notice by Adkison to Nationwide of the alleged loss was provided on September 10, 2016. On that date, the roof to House 2 collapsed. According to Adkison, notice on September 10, 2016 was provided to Mistie Wiggs, an associate insurance agent. Adkison initially reported that the wind event occurred on February 28th or 29th of 2016. [See Exhibit B at p. 000052-53, 000082.]
>
> 13. During his Examination Under Oath, in January of 2017, Adkison claimed, for the first time, that he believed the wind event

---

[2] Notably, no mention of the formation of the insurance contract appears in this section.

responsible for the alleged damage to have occurred in March of 2016, instead of February. Adkison testified that this was based upon a conversation with a local contractor, Jamie Register (hereinafter sometimes referred to as "Register"). According to Adkison, Register recommended replacement of certain trusses as far back as March of 2016, and told Adkison prior to Adkison's Examination Under Oath that he ordered the trusses in April of 2016. [See Exhibit B at p. 000057-58.] As discussed below, the work initially recommended by Register was never performed.

14. Based upon Adkison's initial reporting that the wind event occurred in late February, and his later testimony that he believed same to have occurred in March, it is undisputed that Adkison's best estimate is that the wind event occurred between 5 and 6 months prior to the date he reported the alleged loss to his Nationwide agent.

15. Adkison testified that the reason he did not notify Nationwide immediately after noticing the alleged wind damage was because he never intended to file a claim, and instead intended to provide for the repairs himself. [See Exhibit B at p. 000070.]

16. Regardless of the actual date of the alleged wind event, the first alleged wind damage Adkison noticed was a rolled back tin roof on House 1. Adkison testified that a few days thereafter, he noticed sagging roof lines in House 2 and House 3. [See Exhibit B at p. 000064.]

17. Upon noticing the alleged damage, Adkison testified that he contacted Jaime Register. Register examined Houses 2 and 3, and advised Adkison that some of the trusses in both houses were broken. [See Exhibit B at p. 000067-68.] Register recommended ordering new trusses, and installing the new trusses as needed immediately adjacent to the broken trusses. [See Exhibit B at p. 000069.]

18. The work initially recommended by Register was never performed. [See Exhibit B at p. 000071.] Adkison had a business arrangement whereby once a year, Steve Rostic ("Rostic") would clean out the litter in each poultry house, and pay Adkison for same. [See

8

Exhibit B at p. 000051.] Adkison's litter consists of peanut hulls, and acts as a bedding for the flock. [See Exhibit B at p. 000051.] Adkison claims that removing the litter before commencing the work was necessary because of the risk of ruining the litter. Specifically, Adkison was concerned that the litter would be ruined if insulation dropped from the ceiling and mixed with the litter. [See Exhibit B at p. 000071.] Adkison therefore intended to wait until the litter was removed before allowing Register to proceed with the proposed work.

19. Adkison testified that he called Rostic several times, but Rostic did not have a sale lined up for the litter. [See Exhibit B at p. 000071-72.] Adkison testified that ultimately, after two to three flocks of birds cycled through the poultry houses, things appeared so bad with House 2 that he called Register a second time. [See Exhibit B at p. 000072-74.]

20. Upon being contacted a second time and after reviewing the worsening conditions, Register recommended completely dropping the ceilings to inspect all trusses. This new scope of work was more expansive than the original proposal because more trusses were compromised during the time between Register's initial proposal and the second proposal. [See Exhibit B at p. 000076-77.] Register estimated the costs of this second scope of work at $20,000.00 - $25,000.00. [See Exhibit B at p. 000078.]

21. Adkison testified that at the time of the second estimate, he was in between poultry cycles, meaning no birds were in his poultry houses. [See Exhibit B at p. 000075.] Adkison testified that at that time, Rostic advised that he could remove the litter during the next flock. Because the scope of work set forth in the second proposal from Register could only be performed while no chickens were in the house, Adkison asked Register to secure the roof until another flock could cycle through. [See Exhibit B at p. 000075-76.]

22. Register's crew then "scabbed and repaired" the trusses sagging the worst. [See Exhibit B at p. 000072.] Adkison paid Register approximately $2,100.00 for this work. [See Exhibit B at p. 000079.]

> This work would have occurred between July 22, 2016 and August 16, 2016. [See Exhibit B at p. 000080.]
>
> 23. The roof of House 2 collapsed on September 10, 2016. Since that time, a number of issues have been identified relating to the structural integrity of all four houses. The parties dispute the causation of many of said issues, but for purposes of this action, it suffices to note that Adkison claims that such issues are related to wind damage. Adkison contends that such issues are covered under his insurance policy with Nationwide.
>
> 24. Adkison has obtained an estimate from Jamie Register to repair or replace all four houses. Register's proposal, which includes demolition of House 2, totals $655,212.50 for all four houses. [See Exhibit B, p. 000097; see also Proposal from Jamie Register, attached hereto as Exhibit C.] Upon information and belief, House 2 has already been demolished.
>
> 25. While a number of issues exist with regard to Adkison's claim, the issues in this action for Declaratory Judgment are limited to (1) notice and (2) failure to mitigate/prevent further damage. Nationwide reserves its rights with regard any and all additional issues related to coverage not set forth herein.

(Doc. 1 at 4-8) (footnotes omitted). Not just a "substantial part," but <u>all</u> of these events, which go to the <u>reason</u> for the delay in notice, occurred in Coffee County, Alabama.

Also, as noted, the Plaintiff claims that Adkison failed "to mitigate/prevent further damage." (Doc. 1 at 8, ¶25). A substantial part of the events giving rise to the "failure to mitigate damage" claim necessarily occurred in Coffee County, Alabama,

the location of the property.³ Further, subsection (b)(2) of the 28 U.S.C. § 1391 provides that venue is appropriate in Coffee County where a "substantial part of property that is the subject of the action is situated." Venue is not appropriate in the Northern District of Alabama.

*This Action Will be Dismissed Without Prejudice*

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.A. § 1406(a). "'[T]he decision whether to transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion.'" *Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006) (*quoting Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir.1982)). The Plaintiff makes no showing that its claim is time barred, or otherwise that it would be in the interest of justice to transfer thus action.⁴ Accordingly, pursuant to

---

³ The Plaintiff makes no argument on this point.

⁴ Although the Plaintiff discusses 28 U.S.C.A. § 1404(a) at length, that statute only applies when venue is proper in the first instance. Regardless, the Plaintiff argues against transfer pursuant to that section. The Plaintiff's only argument regarding transfer under 28 U.S.C. § 1406 is found in footnote 2 to its brief in opposition to the motion to dismiss or transfer. (Doc. 14 at 8, n. 2). In that note, it writes:

If this Honorable Court determines that venue is not proper in the United States District Court for the Northern District of Alabama, Nationwide respectfully requests that this Honorable Court, in the interests of justice, transfer this matter to the United

the terms of the statute, this action will be dismissed.

## **CONCLUSION**

Based on the foregoing, and pursuant to 28 U.S.C. § 1406(a), this action will be **DISMISSED without prejudice** due to being filed in the wrong venue.

**DONE** this 3rd day of May, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

> States District Court for the Middle District of Alabama, pursuant to the discretion afforded in 28 U.S.C. § 1406. It is undisputed that this matter could have been filed in the Middle District, and as such, Section 1406 provides that in the case of improper venue, a court may simply transfer the matter to a district where the claim could have been filed as opposed to dismissing the claim altogether. Nationwide respectfully submits that there is no just reason to dismiss the claim outright and force Nationwide to re-file in the Middle District.

(Doc. 14 at 8, n. 2). This underdeveloped argument does not even <u>allege</u> that it would be in the interest of justice to transfer, as opposed to dismiss, this matter. Instead, it turns the statute on its head and argues that there is no just reason to dismiss. The statute calls for dismissal <u>in the first instance</u>, and transfer only upon a showing that the same would be in the interest of justice.